Ms. Mustando for the appellant. You may begin when you're ready. Thank you. May it please the court. My name is Terry Mustando, and I represent. In this case the plaintiff appellant Jane Doe. She's designated as Jane Doe, because at the time all these events occurred. She was 14 years old, and a freshman in high school. In this case, the plaintiff is, we claim the lower court incorrectly dismiss the complaint on a motion to dismiss, finding that the conduct she was subjected to by her coach slash history teacher did not rise the level of shocking the conscience and dismissed all of her claims, based on our constitutional right to both bodily integrity and equal protection. Initially, of course, this is a motion to dismiss, so the allegations in the complaint are very important and of course taken as true. She claims that when she was 14 years old, she was playing on the basketball team, and her coach was also her history teacher engaged in a campaign of isolating her from her friends, and you're humiliating her in public, making the other girls in the She told her she was not allowed to talk to boys. He also told her that she considered her friend, not necessarily a student, while he was saying he's inappropriate things. He was also engaging in an ongoing campaign of sexual touching of her body. And these things are pled with unfortunate detail in the complaint, and they're very important as their blood since the court decided it was not enough to meet the standard. But specifically she pled that on several occasions, her, her basketball coach touched her buttocks with his hand. Several occasions, not just one. She also pled that when she was playing at basketball practice. The coach would always choose to guard her as opposed to anyone else when she was playing the net. And while he was guarding her, he would intentionally brush his arm against her breasts, and almost every practice. She also pled this was not an accident this intentional touching on his part. Also, specifically, doe is so unhappy that she really, you know, she was determined to quit the team. So the coach talked to her and try to persuade her not to quit the team. In doing so, he told her you're a friend. You're not just a team person on my team you're so important to me please don't quit the team. He upset her so much when she turned to leave. He reached out and physically grabbed her buttocks with his hand. These sexual touchings taken together in our, you know, it's our position do shock the conscience sufficiently to give rise to the substantive due process right to bodily integrity in schools, counsel, it goes without saying that the allegations here are disturbing. I don't think anybody would would dispute that. The question that we have is a legal one though and as you said it's whether as a matter of law that shocks the conscience and what I'd like for you to do is to at least compare what we have here with some of the other cases where we've said that behavior does not shock the conscious and some of them are are really extreme frankly and diving into this area. I was even a little shocked at what we've said does not shock the conscience. For example, you know, we've said that slamming a door on a student's arm. This was a college student so not a, not a younger student slamming in their face, and that caused damage to the, to the person's arm was not shocking of the conscience. And we've also said at least into the adult context, this was a firefighter apprentice, having the him strip naked threatened to be raped handcuffed and dragged with people's genitals over his head was not conscious shocking. And then compare that to cases where we have found conscious shocking behavior. In one instance for in the student context, a coach taking a weight, hitting that weight over the students face, such that the so hard that the students, I popped out, and he was How do we compare this and that spectrum between those sorts of cases. Well your honor I think you actually also made a very good point, and one of the distinguishing factors between these cases is that the, the conscious shocking conduct does seem to depend on whether we're dealing with adults or minors. In the case about the, the professor who, you know, Michikawa it's a Japanese name, where he slammed the door. This was a, like an, a one time anger reaction on his part, and plus we're also dealing with another female adult college student. And of course these are all in the corporal punishment arena, as opposed to the sexual. I'm not sure. I think I'm not saying it doesn't matter that something is sexual as opposed to corporal, but what we're talking about is abuse here. And whether it's abuse in one way or another, it's abuse. And so, I guess when we're talking about the extremes, it seems that the abuse in the cases where we found conscious shocking are very extreme and and very physical. And, and even to the point of slamming a door in someone's face and into their arm, where the glass shattered and causing damage. That wasn't enough, as you said because it was maybe a single incident, as opposed to a single incident that caused permanent blindness or single or multiple incident of being hit with a metal cane to some on the head to somebody who is on the ground, without any sort of threatening their arm behavior. So I'm, I'm just trying to make sense counsel and I want your help to see where we fit in, into that spectrum. Well, I do think, you know, of course, this court hasn't directly addressed at all, you know, what, what can say what is considered conscious shocking in the arena of sexual touching and sexual harassment when it comes to a minor and adult. So, like I said, I think that is one of the distinguishing factors it's difficult to compare, you know, a physical hitting and violence sometimes to sexual touching. But, you know, of course our position is they both cause the same damage, and that, you know, especially in this case of course we have damage because she did, you know, threatened to commit suicide and have all kinds of treatment for, you know, related to what it's a bit of a different analysis when it comes to sexual contact contact and if you look at if you look at Skinner though and that's the case of the firefighter. I'm there, there was at least some sexual overtones to it, including a threatened rape, making the firefighter be naked and having him touch the genitals of other people as part of some sort of easing ritual that that seems to be sexual in nature and yet that was not conscious shocking and again, you're right, that's an adult and not a student. If we look to other circuits and I know you, we, the party cite them, the two dough cases out of the fifth and sixth. In both those cases there was a rate. And that obviously I think puts us in a much different category. And again, I'm trying to find where on the spectrum, we are, when you have that sort of extreme conduct versus disturbing contact that we have here, but less extreme. Well, you know, one of the cases we cite in our brief of course is not in this circuit, but it's the, it's the best case that I could locate that sort of gives an analysis point for deciding whether or not sexual contact, when you're talking with an adult teacher and a minor plaintiff, what kind of sexual contact between the two, those two people can rise to the level of shocking the conscience, and that court looked at factors that I think are important, and the court first noted appropriately and as you've seen in the case of New Mexico. And then the other factors that the court looked at are, is there touching of an erogenous zone, and then they specifically said the erogenous is a case of New Mexico, including breasts, buttocks, and genitals. And yes, we have that in this case there was touching of breasts and buttocks, and the other factor was, is it often was it a one time thing. And in this case, you know, no, so at least, especially at the motion dismissing stage we feel like you know that looking at looking at those factors is instructive, you know, it's as far as what the right standard should be to decide where on the spectrum, touching like this should fall in the arena. It can't be that all touching of, and let's assume that the rear end is an erogenous zone I assume that's what you're talking about here also since that's some of the allegations. So, it can't be that every touching is, is, is a is a shocking the conscience. First of all, there's unintentional touching and I think everyone would agree that unintentional touching is different than intentional touching. And second, even for intentional touching there's, you know, I remember there was a time when I played sports when I was younger where your coach would, you know, pat you on the button and send you out. That's certainly not what's alleged or what happened here but that's of a different nature of course, and wouldn't be conscious shocking even though it fits within those factors. So I wonder if that captures everything here there's not need to be some do we need to consider severity intent and other things that are case law seems to be looking at. Oh absolutely your honor in that case they did. I mean one of the factors was, was it an erogenous them, you know, was it a pat on the back, was it a body part, and the severe and the, and how many times like was it, and also you also just look at the bigger picture like what was said to her also not just a touching part but the kind of things and behavior he engaged into isolator and that sort of thing. The court kind of looked at all those things together, and you're trying to put it on that sliding scale of where it where it hits, when does it start to shock the conscience so yes you're absolutely all those things should be taken into account and of course, you know, we say as well that we do meet that standard. And, you know, shouldn't have necessarily been dismissed at the motion dismiss stage the way it was. Let me ask you about another topic before you sit down. Do you agree that defendant Parker is only liable if he personally participated, or is causally connected to the alleged constitutional violation. Yes, Your Honor, I do agree with that, although I do believe in this. Well let me let me just finish my question. And as I understand the allegations of the complaint. There's no allegation that Parker knew about the violation before it happened. Is that right. Yes, Your Honor, there's no allegation to that effect. He came into the picture after it had occurred. Do you agree with that. As far as we know, but we're at the motion to dismiss stage and have not had a chance to do any discovery. And as parents were not necessarily in a position to know we just know how he reacted to the complaint of sexual harassment and so that's what we fled. Okay, so explain to me how you meet the standard that we just talked about. Well, you know, but we're relying, as you know, and the courts prior opinion in the hill, he'll be kind of case, and the idea that you can perpetuate an act and contribute to the cause of sexual harassment or sexual assault in the schools by reacting with deliberate indifference to a complaint of sexual harassment. And, you know, in specifically in the in the hill case the court held that, you know, the principles acts after. After the he found out about the harassment which he was not aware of before, you know, we're a basis to hold him liable under equal protection, and I see my time's expiring. Thank you. Thank you. Okay, Council for happily. Mr Boardman. Yes, ma'am. Please the court. Do you have a law partner clay car who's off camera here, I, we both represent coach Perkins, and we asked you to carry back three important points. First, most state torts are not constitutional violations. In fact, second, this state court tort will be tried by the state court in four months, because the same day the plaintiffs appeal the decision of Judge Burke. They also filed a start state court action, which is pending in Madison County, and will be treated was actually supposed to be tried in one month now, but the court continued to be January 3 2022. And third, the allegations of sexual touching in this manner are all involving the sport of basketball. That doesn't these touching allegations don't happen in English class or history class, they're involved in a contact sport where coach Perkins is teaching the player, how to do things. For example, they say that he would he would touch her, her bottom, and indeed, if he's backing up trying to block out or trying to post up under the basket, then he's going to back into her, his bottom is going to hit her bottom, or she's trying to, she's teaching him, they're going to, they're going to be doing the same thing if he's trying to stop her, he's stepping forward and she's doing backwards. For purposes of the motion to dismiss, we have to take the allegations of the complaint as true, and she's alleging that the touching was intentional. Furthermore, that was part of a campaign of harassing and isolating her separating her from her classmates plus there were also inappropriate things that he said to her. So, how do you respond to the argument that we can't take isolated touchings out of context, you've got to take everything in its entirety, you've got to also consider that they pleaded for whatever reason that the Madison Police Department investigated this matter took no action, the Board of Education investigated this matter, along with his attorney took no action. In fact, there's not even an allegation against Mr Parker of bad faith, the only I mean the superintendent is only that he acted negligently. So you've got these individuals who've actually come in and investigated it, and then you've got to match it with the taking council assume with me something else for the moment. Assume with me that they're the allegations are that on several occasions. The, a teacher at a high school sexually grabbed the rear end of one of their students, and that was the only allegation. Nothing else. Why would we not have a rule or why is it not conscious shocking as a matter of law that a teacher is touching in any kind of sexualized way intentionally a student, why should we not just adopt a rule that that it is conscious shocking in today's day and age that a teacher is going to sexually molest, one of their students in any manner whatsoever, because as stated the way you stated it your honor, you have eliminated any way to coach a high school sport intentional touching includes while I'm dribbling the basketball throwing my arm out I counsel the way my hypothetical took it outside the basketball and made it specifically sexualized. So, yes, yes, without a doubt that if you're coaching someone up, and that's all that we have here that's not what we're talking about my hypothetical is this a high school teacher after school isolates, and then sexually grabs in any place that you could say a student for sole purpose of sexual gratification. Why is that not, you know itself is conscious shocking. Let me answer it two ways. First, that is not the allegation here will find no I'm asking you to answer my hypothetical. Okay, hypothetically that's possible, you've not made that decision at this point but hypothetically that's possible, because when you have repeated sexual misconduct that amounts to a crime that can be shocking to the conscience but in this situation, there is no allegation at all of sexual gratification. And you can look at the parts of the complaint very carefully. There's no allegation of something that there's allegation of touching, but it is in within the context of the basketball. Now the other argument don't talk to boys. Look, I've got a very chatty daughter who played basketball too. It would not surprise me that our teacher in class said don't talk, whether it's don't talk to boys whoever she may be talking to. That's not in and of itself, sexual misconduct or sexual harassment. If you parse the language, since there's no sexual intent there. There's no sexual gratification pleaded. This is not conscious shock. Let me ask you this you're I mean, I assume you know the answer to this question maybe you don't but if, if the allegations were what Judge Luckett said that there were sort of three or four let's say, grabbing incidents that were unrelated to sports, and what kind of crime would that be what would, what would that even be prosecuted class would that be a misdemeanor, or would that be a felony, you know, yeah, and most I would think there would be a misdemeanor second in Alabama misdemeanor second assault. I mean, potentially misdemeanor first assault but it's certainly not going to be a felony level. And it depends upon the, the degree of touching but but you're right in the two doe cases that we that Judge Luck talked about those were specific allegations of crimes, and they were found guilty of the crime either statutory rape or forcible rape. So, that's very, very far away from where we are here, and you don't need to adopt a rule here in reaching a decision on this case as to whether a crime is necessarily conscious shocking, because in this situation, because you have to take the totality of the circumstances. Just as Justice prior said, Judge prior said, you have to consider that the police decided there was no problem. The Board of Education decided there was no problem, the board attorney decided there was no problem that and put the teacher back to coach Perkins back to work. Now, that doesn't involve the plaintiff because she immediately she withdrew from the school. And you got to remember also these allegations were made several months after they supposedly happened. Let me ask you again about the two doe cases admittedly they're not binding because they're out of circuit. But in those cases, it's true that the sexual contact was a crime, but it was also consensual and here the allegations are clear that this was unwanted touching. What difference does that make? Well, Your Honor, I don't know that it can be consensual. Those students don't have the age of consent. In fact, in Alabama, they cannot consent as long as you're a student. That's right. As a matter of criminal law, that's true. Right. So, in that situation, because that's what the law, the legislature has already decided that that's improper activity. So indeed, I think violating what the legislators decided is improper activity is conscious shocking. But that's not. Let me ask you. Let me ask you a different question. Whether the conduct shocks the conscience. Does that depend on how far the sexual assault goes? In other words, whether there was intercourse or whether there was simply unwanted sexual touching. You know, at this point, Your Honor, you've got cases that actually all involve rape and all these cases that were cited, with the exception of the case, they cited the two district court actions. They cited the Hackett versus Fulton County and the Thomas versus city of Clanton. Those were touching the genitals. There was not actual penetration of rape. I guess if you want to say it, I don't know how to answer that question beyond that. At this point, that's not the facts we're dealing with, because since there's no allegation of sexual gratification, there's no allegation that they've not even pleaded a sexual crime here at this point. The Sixth Circuit, though, has held that at least some non-extreme, in other words, non-intercourse and non-rape sexual contact is not conscious shocking. And I'm speaking of the Lillard case. There, at least in part, the court said that rubbing the student's stomach and making suggestive comments, suggestive being sexual, was not conscious shocking, correct? Right. And you've had a case like that, too. You've had a case where a male coach was getting the ball from the playing quarterback under the female center, and he put his hands where he would get the ball. And the allegation, this was the Davis v. DeKalb case in 2000. Y'all said that was not enough for sexual touching to make some type of allegation, some type of federal tort. And that's the point here. She will get her day in court. Her day in court will come in four months. We will try this case over the allegations that are counts two, three, four, and five of the complaint. It's just it's not a federal tort, because when you take the totality of the circumstances, a court of limited jurisdiction doesn't make every, doesn't have every state tort action becoming a specific federal tort. And for that reason, your honors, we ask that you affirm the Judge Burke's decision dismissing this case on the federal claim and send it to the state court for action with regard to state torts. Thank you, Mr. Boardman. Mr. Brooks. May it please the court. My name is Taylor Brooks. I represent the appellee Robbie Parker, who is the superintendent of the Madison County, Madison City School District. A couple of important facts, I think, that may not have been discussed with that are pertinent to Mr. Parker. I think it's already been mentioned. He didn't learn about the harassment until after it had already occurred. That would have been the summer of 2018, according to the allegations in the complaint. His reaction to that was both to speak with the parents of Doe, according to the complaint, and his reaction was also to place Mr. Perkins on administrative leave. He didn't do nothing. I mean, and I think that's a standard response. Nevertheless, Doe then chose to withdraw from the city school system and enroll in private school. And then two or three months later, while Doe was enrolled in private school, Mr. Parker, according to the complaint, met with the parents of Doe, told the parents of Doe that the investigation found insufficient evidence of sexual harassment, and told the parents that he would be coming back to school, even though, of course, Doe wasn't even at the school at the time he allowed the student back. And so the question with obviously with Mr. Parker, there's no allegation that he participated in any of the alleged sexual abuse. And so the question then is, you know, does he have supervisor liability, which has been described by the 11th Circuit as extremely rigorous standard. And I think it's already has been stated correctly by the court, it would require that a plausible allegation that Mr. Parker either participated in the sexual harassment, or there's some type of causal connection. And there's just no allegation of there's certainly no allegation of personal participation. And with respect to a causal connection. That's either as the court's precedent stated an allegation of widespread abuse that he had knowledge of and there's certainly no allegation that he had any knowledge of any sexual abuse by Mr. Perkins prior to this being reported to him or a custom or policy, which created the sexual abuse, also which there's no allegation. I think in Lynn earlier counsel for Doe seems to rely on the case of he'll be kind of, which is totally different than what we have here and he'll be kind of the administrator who was denied and of course, we're alleged we have contended in the court is great the district court granted qualified immunity for Robbie Parker, but in that case, the administrator, who was denied qualified immunity and he'll be kind of had created a policy of a catch in the act policy and a policy of destroying records, and so he created a policy, the policy he then created was implemented by another employee and that policy cost, the rate of the student. And so, in that case, then, after the very policy that that administrator created caused the second the the rate of the student. Then, when he learned of the rate. He did nothing to change the policy that he created which caused the alleged constant constitutional deprivation and that student remained at the school from January, until March, and he did nothing to change any of the policies that he created that caused the harm. I mean we do not have those facts alleged here in this case, there's no allegation that that Robbie Parker created any policy that that helped foster what Mr Perkins is alleged to have done what this case is far more similar to it's completely dissimilar to the hill be kind of case. It's far more similar to the Hartley v Parnell case where the superintendent learned that that the teach a teacher had sexually touched a student on a school trip. The superintendent in that in the Hartley versus Parnell case, then moved moved the student to another class, even though the students still remained going to the same school in the same building with the teacher who would harassed him. But there was no further harassment after the superintendent learned of the harassment and took and took that action and in the heart and the 11th circuit and Hartley Parnell said said that, because there was no further sexual harassment after the superintendent learned of it and took that action that there was no constitutional deprivation is a matter of the ball. And here, Robbie Parker did more than the superintendent and Hartley be Parnell Robbie Parker didn't didn't put the teacher on administrative leave from the entire school not just move the student to another class. And, and certainly, you know, Hartley be Parnell shows there's not a constitutional deprivation in light of Hartley versus Parnell, there's certainly no can be no statement that that there is clearly established law that the conduct of Robbie Parker violated. Miss does rights and therefore Robbie, the court district court directly granted qualified immunity to rock for Robbie Parker. Thank you, Mr Brooks will now hear a rebuttal from Miss mustango. I'm your honors. First of all, you know, really has, it shouldn't matter whether or not there was a crime committed, you know, the court looks at the conduct itself of course to decide whether or not it, it shocks the conscience, and in this court made that really clear in the lack of investigation or police determination that something's consensual. You know the school still has its own responsibility to handle complaints and sexual harassment so you to address the kind of the reason I asked that question and see what you think about this so this is a substantive due process right that you were raising here. So it's not a textual based right of the Constitution, it arises out of sort of the idea that there's a fundamental right or liberty that subjectively deeply rooted in the nation's history and tradition, right that we're protecting given that that's the right that we're talking about one that has to be sort of deeply rooted in the nation's tradition and history. Shouldn't it matter if this is the kind of conduct that has ever been criminalized or made into a felony. I mean I definitely think it's a relevant inquiry and, you know, of course the court standard is you that you have, you know, stated it is it's, where does it fall on the spectrum of tort in tort law, you know, necessarily speaking, you know, whether it's at the, at the criminal intentional end of tort law or whether it's on the negligence and intentional end of the tort law, and, you know, intentional in our, our, you know, our positions obviously the intentional physical touching, you know, is and can be a crime whether or not the police conducted inadequate investigation and actually charged this particular coach with a crime. But yes, your inquiry was more in the nature of, does the criminal level of the offense matter and I do think it does and I do think we have that too in this case that it does rise to that level. So the other point I was going to briefly make was that she was not offered any protection, when she was told her parents were told that they were going to bring this coach that physically sexually touched her. She was also told there was no evidence to support. We don't know what investigation was or wasn't done. All we pled was that she was her parents were told the investigation would happen. However, we have our, you know, we have pled also that she was also told that nothing was going to be done there was no evidence, even though she had provided her own personal statement about what had happened to support anything she said and he was simply going to be returned with no promises as to her safety. So, very much. Do you mind if I ask one follow up question. So, your friend on the other side of the case, Mr Boardman said that there was an anticipated trial in four months and Madison County. I assume that is, you would say that that is incorrect and that there hasn't been discovery and that is not ready for trial, but maybe I'm wrong about that is it ready for trial. It is not actually ready for trial we actually had separate trial it's got postponed, so we have not finished discovery we're still in the midst of discovery. Thank you counsel. We've got your arguments.